

| United States Department of Agriculture | Office of the General Counsel | Washington, D.C. 20250-1400 |

**STEPHEN ALEXANDER VADEN**
**GENERAL COUNSEL**

May 28, 2019

## MEMORANDUM

SUBJECT: EXECUTIVE SUMMARY OF NEW HEMP AUTHORITIES

On December 20, 2018, President Trump signed into law the Agriculture Improvement Act of 2018, Pub. L. 115-334 (2018 Farm Bill). The 2018 Farm Bill legalized hemp production for all purposes within the parameters laid out in the statute.

The Office of the General Counsel (OGC) has issued the attached legal opinion to address questions regarding several of the hemp-related provisions of the 2018 Farm Bill, including: a phase-out of the industrial hemp pilot authority in the Agricultural Act of 2014 (2014 Farm Bill) **(Section 7605)**; an amendment to the Agricultural Marketing Act of 1946 to allow States and Indian tribes to regulate hemp production or follow a Department of Agriculture (USDA) plan regulating hemp production **(Section 10113)**; a provision ensuring the free flow of hemp in interstate commerce **(Section 10114)**; and the removal of hemp from the Controlled Substances Act **(Section 12619)**.

The key conclusions of the OGC legal opinion are the following:

1. As of the enactment of the 2018 Farm Bill on December 20, 2018, hemp has been removed from schedule I of the Controlled Substances Act and is no longer a controlled substance.

2. After USDA publishes regulations implementing the new hemp production provisions of the 2018 Farm Bill contained in the Agricultural Marketing Act of 1946, States and Indian tribes may not prohibit the interstate transportation or shipment of hemp lawfully produced under a State or Tribal plan or under a license issued under the USDA plan.

3. States and Indian tribes also may not prohibit the interstate transportation or shipment of hemp lawfully produced under the 2014 Farm Bill.

4. A person with a State or Federal felony conviction relating to a controlled substance is subject to a 10-year ineligibility restriction on producing hemp under the Agricultural Marketing Act of 1946. An exception applies to a person who was lawfully growing hemp under the 2014 Farm Bill **before December 20, 2018,** and whose conviction also occurred before that date.



EXHIBIT 1

MEMORANDUM
May 28, 2019
Page 2

With the enactment of the 2018 Farm Bill, hemp may be grown only (1) with a valid USDA-issued license, (2) under a USDA-approved State or Tribal plan, or (3) under the 2014 Farm Bill industrial hemp pilot authority. That pilot authority will expire one year after USDA establishes a plan for issuing USDA licenses under the provisions of the 2018 Farm Bill.

It is important for the public to recognize that the 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the **production** of hemp that are more stringent than Federal law. Thus, while a State or an Indian tribe cannot block the shipment of hemp through that State or Tribal territory, it may continue to enforce State or Tribal laws prohibiting the growing of hemp in that State or Tribal territory.

It is also important to emphasize that the 2018 Farm Bill does not affect or modify the authority of the Secretary of Health and Human Services or Commissioner of Food and Drugs to regulate hemp under applicable U.S. Food and Drug Administration (FDA) laws.

USDA expects to issue regulations implementing the new hemp production authorities in 2019.


Attachment



| | | |
|---|---|---|
| United States Department of Agriculture | Office of the General Counsel | Washington, D.C. 20250-1400 |

**STEPHEN ALEXANDER VADEN**
**GENERAL COUNSEL**

May 28, 2019

MEMORANDUM FOR SONNY PERDUE
　　　　　　　　　SECRETARY OF AGRICULTURE

SUBJECT:　　　LEGAL OPINION ON CERTAIN PROVISIONS OF THE AGRICULTURE IMPROVEMENT ACT OF 2018 RELATING TO HEMP

This memorandum provides my legal opinion on certain provisions of the Agriculture Improvement Act of 2018 ("2018 Farm Bill"), Pub. L. No. 115-334, relating to hemp.

As explained below, this memorandum concludes the following:

1. As of the enactment of the 2018 Farm Bill on December 20, 2018, hemp has been removed from schedule I of the Controlled Substances Act ("CSA") and is no longer a controlled substance. Hemp is defined under the 2018 Farm Bill to include any cannabis plant, or derivative thereof, that contains not more than 0.3 percent delta-9 tetrahydrocannabinol ("THC") on a dry-weight basis.

2. After the Department of Agriculture ("USDA" or "Department") publishes regulations implementing the hemp production provisions of the 2018 Farm Bill contained in subtitle G of the Agricultural Marketing Act of 1946 ("AMA"), States and Indian tribes may not prohibit the interstate transportation or shipment of hemp lawfully produced under a State or Tribal plan or under a license issued under the Departmental plan.

3. States and Indian tribes may not prohibit the interstate transportation or shipment of hemp lawfully produced under the Agricultural Act of 2014 ("2014 Farm Bill").

4. A person with a State or Federal felony conviction relating to a controlled substance is subject to a 10-year ineligibility restriction on producing hemp under subtitle G of the AMA. An exception applies to a person who was lawfully growing hemp under the 2014 Farm Bill before December 20, 2018, and whose conviction also occurred before that date.

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 2

This memorandum also emphasizes two important aspects of the 2018 Farm Bill provisions relating to hemp. First, the 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the **production** (but not the interstate transportation or shipment) of hemp that are more stringent than Federal law. For example, a State law prohibiting the growth or cultivation of hemp may continue to be enforced by that State. Second, the 2018 Farm Bill does not affect or modify the authority of the Secretary of Health and Human Services or Commissioner of Food and Drugs under applicable U.S. Food and Drug Administration laws.

## I. BACKGROUND

The 2018 Farm Bill, Pub. L. No. 115-334, enacted on December 20, 2018, includes several provisions relating to hemp.[1] This legal opinion focuses on sections 7605, 10113, 10114, and 12619, summarized below.

- **Section 7605** amends section 7606 of the 2014 Farm Bill (7 U.S.C. § 5940), which authorizes institutions of higher education or State departments of agriculture to grow or cultivate industrial hemp under certain conditions — namely, if the hemp is grown or cultivated for research purposes in a State that allows hemp production. Among other things, section 7605 amends 2014 Farm Bill § 7606 to require the Secretary of Agriculture ("Secretary") to conduct a study of these hemp research programs and submit a report to Congress. Section 7605 also repeals 2014 Farm Bill § 7606, effective one year after the date on which the Secretary establishes a plan under section 297C of the AMA.[2]

- **Section 10113** amends the AMA by adding a new subtitle G (sections 297A through 297E) (7 U.S.C. §§ 1639o – 1639s) relating to hemp production. Under this new authority, a State or Indian tribe that wishes to have primary regulatory authority over the production of hemp in that State or territory of that Indian tribe may submit, for the approval of the Secretary, a plan concerning the monitoring and regulation of such hemp production. See AMA § 297B. For States or Indian tribes that do not have approved plans, the Secretary is directed to establish a Departmental plan concerning the monitoring and regulation of hemp production in those areas. See AMA § 297C. The

---

[1] The 2014 Farm Bill defines **"industrial hemp"** as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(a)(2). The 2018 Farm Bill added a new, slightly different definition of **"hemp"** in section 297A of the AMA, defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Both definitions require a THC concentration of not more than 0.3 percent for a Cannabis sativa L. plant to be considered hemp versus marijuana. For purposes of this legal opinion, I use the terms **"hemp"** and **"industrial hemp"** interchangeably.

[2] The Conference Report accompanying the 2018 Farm Bill explains the effect of the repeal as follows: "The provision also repeals the hemp research pilot programs one year after the Secretary publishes a final regulation allowing for full-scale commercial production of hemp as provided in section 297C of the [AMA]." H.R. REP. NO. 115-1072, at 699 (2018).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 3

- Secretary is also required to promulgate regulations and guidelines implementing subtitle G. *See* AMA § 297D. The new authority also provides definitions (*see* AMA § 297A) and an authorization of appropriations (*see* AMA § 297E).

- **Section 10114** (7 U.S.C. § 1639o note) is a freestanding provision stating that nothing in title X of the 2018 Farm Bill prohibits the interstate commerce of hemp or hemp products. Section 10114 also provides that States and Indian tribes shall not prohibit the interstate transportation or shipment of hemp or hemp products produced in accordance with subtitle G through the State or territory of the Indian tribe.

- **Section 12619** amends the CSA to exclude hemp from the CSA definition of marijuana. Section 12619 also amends the CSA to exclude THC in hemp from Schedule I.[3]

In passing the 2018 Farm Bill, Congress legalized hemp production for all purposes within the parameters of the statute but reserved to the States and Indian tribes authority to enact and enforce more stringent laws regulating production of hemp.

## II. ANALYSIS

### A. As of the Enactment of the 2018 Farm Bill on December 20, 2018, Hemp Has Been Removed from Schedule I of the Controlled Substances Act and Is No Longer a Controlled Substance.

CSA § 102(6) defines "controlled substance" to mean "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this title. . . ." 21 U.S.C. § 802(6). Marijuana[4] is a controlled substance listed in schedule I of the CSA. *See* CSA § 202(c)(10), schedule I (21 U.S.C. § 812(c), Schedule I (c)(10)); 21 C.F.R. § 1308.11(d)(23).

The 2018 Farm Bill amended the CSA in two ways.

- First, 2018 Farm Bill § 12619(a) amended the CSA definition of marijuana to exclude hemp. Before enactment of the 2018 Farm Bill, CSA § 102(16) (21 U.S.C. § 802(16)) defined marijuana as follows:

    (16) The term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake,

---

[3] For additional background on hemp production prior to enactment of the 2018 Farm Bill, *see* Congressional Research Service, "Hemp as an Agricultural Commodity" (RL32725) (updated July 9, 2018), *available at* https://crsreports.congress.gov/product/pdf/RL/RL32725.

[4] This opinion uses the common spelling of "marijuana" except when quoting the CSA, which uses the "marihuana" spelling.

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 4

   or the sterilized seed of such plant which is incapable of germination.

  As amended by the 2018 Farm Bill, the CSA definition of marijuana now reads:

> (A) Subject to subparagraph (B), the term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.
>
> (B) The term 'marihuana' does not include—
>
> (i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946; or
>
> (ii) the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

- Second, 2018 Farm Bill § 12619(b) amended the CSA to exclude THC in hemp from the term "tetrahydrocannabinols" in schedule I. As amended by the 2018 Farm Bill, CSA § 202(c)(17), schedule I (21 U.S.C. § 812(c)(17), schedule I) now reads:

> Tetrahydrocannabinols, except for tetrahydrocannabinols in hemp (as defined under section 297A of the Agricultural Marketing Act of 1946).

By amending the definition of marijuana to exclude hemp as defined in AMA § 297A, Congress has removed hemp from schedule I and removed it entirely from the CSA. In other words, hemp is no longer a controlled substance. Also, by amending schedule I to exclude THC in hemp, Congress has likewise removed THC in hemp from the CSA.

It is important to note that this decontrolling of hemp (and THC in hemp) is self-executing. Although the CSA implementing regulations must be updated to reflect the 2018 Farm Bill amendments to the CSA, neither the publication of those updated regulations nor any other action is necessary to execute this removal.

I address here two principal objections to the view that the decontrolling of hemp is self-executing. The first objection is that, because regulations have not been published under CSA § 201, the legislative changes to schedule I regarding hemp are not effective. This objection is not valid.

The typical process for amending the CSA schedules is through rulemaking. Under CSA § 201(a), the Attorney General "may by rule" add to, remove from, or transfer between the schedules, any drugs or other substances upon the making of certain findings. 21 U.S.C. § 811(a). However, the schedules also can be amended directly by Congress through changes to the statute; and Congress has done so several times.[5]

---

[5] *See, e.g.*, Pub. L. 112-144, § 1152 (amending schedule I to add cannabimimetic agents); Pub. L. 101-647, § 1902(a) (amending schedule III to add anabolic steroids).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 5

The second objection is that, because the legislative changes to schedule I regarding hemp are not yet reflected in 21 C.F.R. § 1308.11, the removal is not yet effective. This objection also is not valid.

It is axiomatic that statutes trump regulations. *See Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 829 (D.C. Cir. 2006) ("[A] valid statute always prevails over a conflicting regulation[.]"). Congress established the five CSA schedules in statute, providing that "[s]uch schedules shall initially consist of the substances listed in this section." 21 U.S.C. § 812(a).[6] Congress further provided that "[t]he schedules established by this section shall be updated and republished on a semiannual basis during the two-year period beginning one year after October 27, 1970, and shall be updated and republished on an annual basis thereafter." 21 U.S.C. § 812(a). The requirement to update and republish the schedules, however, is not a prerequisite to the effectiveness of the schedules "established by [the statute]." *Id.* In other words, where Congress itself amends the schedules to add or remove a controlled substance, the addition or removal of that controlled substance is effective immediately on enactment (absent some other effective date in the legislation); its addition to or removal from a schedule is not dependent on rulemaking.[7]

To illustrate, Congress amended the CSA in 2012 to add "cannabimimetic agents" to schedule I. That amendment was enacted as part of the Synthetic Drug Abuse Prevention Act of 2012 (Pub. L. 112-144, title XI, subtitle D), which was signed into law on July 9, 2012. Almost six months later, the Drug Enforcement Administration ("DEA") published a final rule establishing the drug codes for the cannabimimetic agents added to schedule I by Congress and making other conforming changes to schedule I as codified in 21 C.F.R. § 1308.11. *See* 78 Fed. Reg. 664 (Jan. 4, 2013). In explaining why notice-and-comment rulemaking was unnecessary, DEA noted that "the placement of these 26 substances in Schedule I **has already been in effect since July 9, 2012.**" *Id.* at 665 (emphasis added). In other words, the legislative changes to schedule I were effective immediately upon enactment. The reflection of those changes in 21 C.F.R. § 1308.11, although required by 21 U.S.C. § 812(a), was not necessary for the execution of those changes to schedule I.

Accordingly, enactment of the 2018 Farm Bill accomplished the removal of hemp (and THC in hemp[8]) from the CSA. Conforming amendments to 21 C.F.R. § 1308.11, while required as part

---

[6] "Marihuana" and "Tetrahydrocannabinols" were both included in the initial schedule I established by Congress in 1970.

[7] *Cf. United States v. Huerta*, 547 F.2d 545, 547 (10th Cir. 1977) ("[F]ailure to publish the 'updated' schedules as required by Section 812(a) had no effect upon the validity of those substances initially listed in the five schedules."); *United States v. Monroe*, 408 F. Supp. 270, 274 (N.D. Cal. 1976) ("Thus, while section 812(a) clearly orders the controlled substance schedules to be republished, it is clear that Congress did not intend republication to serve as a reissuance of the schedules, which if done improperly would cause those schedules to lapse and expire. . . . [T]he requirement that the schedules, once 'updated,' be 'republished' was solely for the purpose of establishing one list which would reflect all substances which were currently subject to the Act's provisions. . . .").

[8] Schedule I, as published in 21 C.F.R. § 1308.11, includes a definition of "tetrahydrocannabinols" in paragraph (d)(31) that does not appear in the CSA. Notwithstanding the presence of that definition in the current regulations, I

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 6

of DEA's continuing obligation to publish updated schedules, are not necessary to execute the 2018 Farm Bill changes to schedule I.[9]

**B.    After the Department of Agriculture Publishes Regulations Implementing the Hemp Production Provisions of the 2018 Farm Bill Contained in Subtitle G of the Agricultural Marketing Act of 1946, States and Indian Tribes May Not Prohibit the Interstate Transportation or Shipment of Hemp Lawfully Produced Under a State or Tribal Plan or Under a License Issued Under the Departmental Plan.**

AMA § 297D(a)(1)(A) directs the Secretary to issue regulations and guidelines "as expeditiously as possible" to implement subtitle G of the AMA. 7 U.S.C. § 1639r(a)(1)(A). These regulations will address the approval of State and Tribal plans under AMA § 297B and the issuance of licenses under the Departmental plan under AMA § 297C. As explained below, once these regulations are published, States and Indian tribes may not prohibit the transportation or shipment of hemp (including hemp products) produced in accordance with an approved State or Tribal plan or produced under a license issued under the Departmental plan.

Transportation of hemp is addressed in 2018 Farm Bill § 10114.[10] Subsection (a) provides:

> (a) RULE OF CONSTRUCTION.—Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

7 U.S.C. § 1639o note. This provision states that nothing in title X of the 2018 Farm Bill

---

am of the opinion that THC in hemp is excluded from THC as a schedule I controlled substance under the CSA by virtue of the 2018 Farm Bill amendments.

[9] Schedule I, as reflected in 21 C.F.R. § 1308.11, includes a separate listing of "marihuana extract" in paragraph (d)(58). Marijuana extract is not reflected in schedule I in the statute because it was added after 1970 by regulation under CSA § 201. The term "marihuana extract" is defined in regulation as "an extract containing one or more cannabinoids that has been derived from any plant of the genus Cannabis, other than the separated resin (whether crude or purified) obtained from the plant." The 2018 Farm Bill amended the definition of "marihuana" to exclude hemp, but because the regulatory definition of "marihuana extract" in schedule I does not use the words "marihuana" or "tetrahydrocannabinols" to define the term, a question arises whether **hemp extract** is still considered to be listed as a schedule I controlled substance. While the issue is not further addressed in this opinion, I think that the revised statutory definition of "marihuana" has effectively removed hemp extract from schedule I, and that reflecting such in 21 C.F.R. § 1308.11(d)(58) would be merely a conforming amendment.

[10] Hemp transportation is also addressed in annual appropriations acts, which restrict Federal appropriated funds from being used to prohibit the transportation of hemp. However, those provisions are limited in scope because they address only hemp produced under the 2014 Farm Bill authority, and they address only **Federal** government actions. That is, while the provisions prohibit Federal actors from blocking the transportation of so-called "2014 Farm Bill hemp," they do not restrict State action in that regard. *See* Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2019, Pub. L. 116-6, div. B, § 728 (prohibiting funds made available by that Act or any other Act from being used in contravention of 2014 Farm Bill § 7606 or "to prohibit the transportation, processing, sale, or use of industrial hemp, or seeds of such plant, that is grown or cultivated in accordance with [2014 Farm Bill § 7606], within or outside the State in which the industrial hemp is grown or cultivated"). *See also* Commerce, Justice, Science, and Related Agencies Appropriations Act, 2019, Pub. L. 116-6, div. C, § 536 ("None of the funds made available by this Act may be used in contravention of [2014 Farm Bill § 7606] by the Department of Justice or the Drug Enforcement Administration.").

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 7

prohibits the interstate commerce of hemp. However, this provision, standing alone, does not have the effect of sanctioning the transportation of hemp in States or Tribal areas where such transportation is prohibited under State or Tribal law.

Subsection (b), however, specifically prohibits States and Indian tribes from prohibiting the transportation of hemp through that State or Tribal territory. Subsection (b) provides:

> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS.—No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

7 U.S.C. § 1639o note. In effect, this provision preempts State law to the extent such State law prohibits the interstate transportation or shipment of hemp that has been produced in accordance with subtitle G of the AMA.

As a matter of constitutional law, "[t]he Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any [S]tate to the Contrary notwithstanding. . . .' Under this principle, Congress has the power to preempt [S]tate law." *Arizona v. United States*, 567 U.S. 387, 398-99 (2012) (citing U.S. Const. art. VI, cl. 2). "Under the doctrine of federal preemption, a federal law supersedes or supplants an inconsistent [S]tate law or regulation." *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016).

Federal courts generally recognize three categories of preemption: (1) express preemption (where Congress "withdraw[s]" powers from the State through an "express preemption provision");[11] (2) field preemption (where States are "precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance");[12] and conflict preemption (where State laws are preempted when they conflict with Federal law, which includes situations "where 'compliance with both federal and [S]tate regulations is a physical impossibility'" or situations "where the challenged [S]tate law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'").[13] *Arizona*, 567 U.S. at 399-400 (citations omitted); *see also Zadeh*, 820 F.3d at 751.

---

[11] *See, e.g.*, 7 U.S.C. § 1639i(b) ("(b) Federal preemption.—No State or a political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food or seed in interstate commerce any requirement relating to the labeling of whether a food (including food served in a restaurant or similar establishment) or seed is genetically engineered (which shall include such other similar terms as determined by the Secretary of Agriculture) or was developed or produced using genetic engineering, including any requirement for claims that a food or seed is or contains an ingredient that was developed or produced using genetic engineering.").

[12] *See, e.g., Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 ("[T]he federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the [S]tates.").

[13] *See, e.g.*, 21 U.S.C. § 903 ("No provision of this subchapter shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 8

Section 10114(b) of the 2018 Farm Bill satisfies the definition of conflict preemption because a State law prohibiting the interstate transportation or shipment of hemp or hemp products that have been produced in accordance with subtitle G of the AMA would be in direct conflict with section 10114(b), which provides that no State may prohibit such activity.[14] Therefore, any such State law has been preempted by Congress. The same result applies to Indian tribes.[15]

In sum, once the implementing regulations are published, States and Indian tribes may not prohibit the shipment of hemp lawfully produced under an approved State or Tribal plan or under a license issued under the Departmental plan.

### C. States and Indian Tribes May Not Prohibit the Interstate Transportation or Shipment of Hemp Lawfully Produced Under the Agricultural Act of 2014.

Because the 2018 Farm Bill does not immediately repeal the hemp pilot authority in 2014 Farm Bill § 7606 — and because the publication of regulations implementing the hemp production provisions of the 2018 Farm Bill will likely not occur until later in 2019 — the question arises whether States and Indian tribes are prohibited from blocking the interstate transportation or shipment of hemp (including hemp products) lawfully produced under the 2014 Farm Bill. The answer depends on the meaning of the phrase "in accordance with subtitle G of the Agricultural Marketing Act of 1946" in 2018 Farm Bill § 10114(b) (7 U.S.C. § 1639o note). Only hemp produced in accordance with subtitle G is covered by the preemption provision discussed above. As explained below, it is my opinion that the answer to this question is yes, by operation of AMA § 297B(f).

AMA § 297B(f) states the legal effect of the provisions authorizing States and Indian tribes to develop plans for exercising primary regulatory authority over the production of hemp within that State or territory of the Indian tribe. Specifically, section 297B(f) provides:

> (f) EFFECT.—Nothing in this section prohibits the production of hemp in a State or the territory of an Indian tribe—
>
> (1) for which a State or Tribal plan is not approved under this section, if the production of hemp is in accordance with section 297C **or other Federal laws** (including regulations); and
>
> (2) if the production of hemp is not otherwise prohibited by the State or Indian tribe.

---

a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.").

[14] Alternatively, section 10114(b) might be considered an express preemption provision because the statute expressly withdraws the power of a State to prohibit the transportation or shipment of hemp or hemp products through the State.

[15] AMA § 297B(a)(3) contains an anti-preemption provision stating that nothing in § 297B(a) "preempts or limits any law of a State or Indian tribe" that "regulates the production of hemp" and "is more stringent than [subtitle G]." 7 U.S.C. § 1639p(a)(3). However, that anti-preemption provision is limited to the **production** of hemp — not the **transportation** or shipment of hemp — and thus does not conflict with 2018 Farm Bill § 10114(b).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 9

7 U.S.C. § 1639p(f) (emphasis added).

This provision addresses the production of hemp in a State or Tribal territory for which the State or tribe does not have an approved plan under AMA § 297B. This provision acknowledges that, in such a scenario, the production of hemp in that State or Tribal territory is still permissible if it is produced **either** in accordance with the Departmental plan under AMA § 297C **or** in accordance with other Federal laws, and the State or tribe does not otherwise prohibit its production.

The plain language of subtitle G of the AMA, as added by the 2018 Farm Bill, thus clearly contemplates a scenario in which hemp is neither produced under an approved 297B plan nor under a license issued under the Department's 297C plan, but is still legally produced under "other Federal laws." It is my opinion that "other Federal laws" encompasses 2014 Farm Bill § 7606.[16]

To my knowledge, before enactment of 2014 Farm Bill § 7606, the CSA was the only Federal law that authorized the production of hemp. Indeed, the production of hemp — as the "manufacture" of a schedule I controlled substance — was generally prohibited under the CSA except to the extent authorized under a registration or waiver under the CSA. *See* 21 U.S.C. §§ 802(15), 802(22), 822, and 823; 21 C.F.R. part 1301. Given (1) the removal of hemp as a controlled substance under the CSA, (2) the delayed repeal of the 2014 Farm Bill § 7606 authority, and (3) the enactment of the new hemp production authorities in subtitle G of the AMA, it is my opinion that "other Federal laws" refers to the provisions of 2014 Farm Bill § 7606, which are still in effect. Such an interpretation gives immediate effect to the phrase "other Federal laws." It is a "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *See, e.g., Loughrin v. United States*, 573 U.S. 351, 358 (2014) (internal quotations and citations omitted).

Therefore, reading AMA § 297B(f) in harmony with 2018 Farm Bill § 10114(b), if the hemp is legally produced in accordance with 2014 Farm Bill § 7606 ("other Federal law"), then, by virtue of AMA § 297B(f), its production is not prohibited. Such hemp would have been produced "in accordance with subtitle G," which specifically addresses just such a scenario, as AMA § 297B(f) is part of subtitle G. Accordingly, under 2018 Farm Bill § 10114(b), a State or Indian

---

[16] That Congress envisioned such a scenario is apparent given the language in 2018 Farm Bill § 7605(b) delaying the repeal of 2014 Farm Bill § 7606 until 12 months **after** the Secretary establishes the 297C plan. Accordingly, this interpretation is not precluded by AMA § 297C(c)(1), which provides: "[i]n the case of a State or Indian tribe for which a State or Tribal plan is not approved under section 297B, it shall be unlawful to produce hemp in that State or the territory of that Indian tribe without a license issued by the Secretary under subsection (b)." Given the reference to "or other Federal laws" in AMA § 297B(f)(1) — and the fact that 2014 Farm Bill § 7606 is still in effect — it would be an absurd reading of AMA § 297C(c)(1) to conclude that hemp produced in accordance with Federal law (2014 Farm Bill § 7606) is, at the same time, unlawful without a separate license issued by the Secretary under the 297C plan. As courts have long recognized, statutory interpretations that "produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 10

tribe may not prohibit the transportation or shipment of so-called "2014 Farm Bill hemp" through that State or Tribal territory.[17]

## Recent Developments

I acknowledge that this conclusion is in tension with a recent decision in a case in the District of Idaho, but it also is consistent with a recent decision in a case in the Southern District of West Virginia. Neither court addressed the "other Federal laws" language in AMA § 297B(f)(1), which I find conclusive.

In *Big Sky Scientific LLC v. Idaho State Police*, Case No. 19-CV-00040 (D. Idaho), a magistrate judge found that a shipment of Oregon hemp bound for Colorado and interdicted by Idaho State Police could not have been produced "in accordance with subtitle G" because the State of origin does not yet have an approved plan under AMA § 297B and the Secretary has not yet established a plan under AMA § 297C.[18] The magistrate acknowledged Oregon law authorizing the cultivation of hemp, noting the plaintiff's assertion that the hemp was produced by a grower licensed by the Oregon Department of Agriculture (and, thus, presumably in compliance with 2014 Farm Bill § 7606 requirements).[19] However, in denying the plaintiff's motion for a preliminary injunction, the magistrate concluded that, in enacting the 2018 Farm Bill, Congress intended to "create a regulatory framework around the production and interstate transportation of hemp for purposes of federal law, and that framework is to be contained in the federal (or compliant [S]tate or [T]ribal) plan for production of hemp found in the 2018 Farm Bill."[20] Although the 2018 Farm Bill allows hemp to be transported across State lines, the magistrate found those interstate commerce protections apply only to hemp produced under regulations promulgated under the authority of the 2018 Farm Bill.[21] Therefore, because those regulations do not yet exist, the interdicted hemp is subject to Idaho law prohibiting its transportation.

USDA is not a party in the *Big Sky* case, and this office does not concur with the reasoning of the magistrate regarding the shipment of hemp lawfully produced under the 2014 Farm Bill. In

---

[17] This conclusion seems to be supported in the legislative history as well. In explaining the effect of the preemption provision, the Conference Report states: "While [S]tates and Indian tribes may limit the production and sale of hemp and hemp products within their borders, the Managers, in Sec. 10112 [sic], agreed to not allow [S]tates and Indian tribes to limit the transportation or shipment of hemp or hemp products through the [S]tate or Indian territory." H.R. REP. NO. 115-1072, at 738 (2018). Notably, the Managers referred to hemp generally, not merely hemp produced under a plan developed under subtitle G of the AMA.

[18] *See Big Sky*, ECF Doc. #32, Memorandum Decision and Order Re: Plaintiff's Motion for Preliminary Injunction; *see also* ECF Doc. #6, Memorandum Decision and Order Re: Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Plaintiff's Motion to File Overlength Brief (*available at* 2019 WL 438336 (Feb. 2, 2019)).

[19] *Big Sky*, ECF Doc. #32, at 5, 7-8.

[20] *Id.* at 3.

[21] *Id.* at 19-26.

interpreting the statutory language, the magistrate correctly noted the well-recognized principle of statutory construction that statutes should not be interpreted "in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous."[22] However, seemingly ignoring that guiding principle of interpretation, the magistrate did not address the effect of the "other Federal laws" language in AMA § 297B(f) or attempt to give that language any meaning. The Idaho court failed to read the statute as a whole and did not consider the "other Federal laws" clause that I find conclusive. Given the preliminary nature of the magistrate's ruling, I find his opinion denying a preliminary injunction unpersuasive.[23]

Conversely, the interpretation of 2018 Farm Bill § 10114 advanced by this legal opinion is consistent with a decision issued in the Southern District of West Virginia. In *United States v. Mallory*, Case No. 18-CV-1289 (S.D. W. Va.), the Department of Justice filed a civil action to seize hemp allegedly grown in violation of the CSA and also outside the scope of the 2014 Farm Bill. At issue in that case was hemp purportedly grown by a producer licensed by the State of West Virginia under a 2014 Farm Bill § 7606 pilot program, where the hemp seeds were shipped from a Kentucky supplier licensed by the Commonwealth of Kentucky under a 2014 Farm Bill § 7606 pilot program. The court relied on a combination of laws — the 2014 Farm Bill, the appropriations acts provisions,[24] and the 2018 Farm Bill — to dissolve a preliminary injunction against the defendant[25] and to dismiss entirely the government's case.[26] In dissolving the preliminary injunction, the court permitted the defendants to transport the hemp product across State lines to Pennsylvania for processing and sale.[27]

Although the *Mallory* court did not have occasion to address any State attempts to block the transportation of hemp, the court did reference 2018 Farm Bill § 10114, noting that it "expressly allows hemp, its seeds, and hemp-derived products to be transported across State lines."[28] The district judge's opinion addressed hemp produced under 2014 Farm Bill § 7606 and not hemp produced under State, Tribal, or Departmental plans. The conclusion reached by the *Mallory* court is consistent with my interpretation that States cannot block the shipment of hemp, whether

---

[22] *Id.* at 21-22 (citing *Padash v. I.N.S.*, 258 F.3d 1161, 1170-71 (9th Cir. 2004)). The magistrate continued:

> It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant. . . . It is our duty to give effect, if possible, to every clause and word of a statute.

*Id.* at 23 (internal quotations and citations omitted).

[23] Indeed, the magistrate's ruling is under appeal. *See Big Sky Sci. LLC v. Bennetts*, Case No. 19-35138 (9th Cir.).

[24] *See supra* footnote 10.

[25] *Mallory*, ECF Doc. #60, Memorandum Opinion and Order, 2019 WL 252530 (S.D. W. Va. Jan. 17, 2019).

[26] *Mallory*, ECF Doc. #72, Memorandum Opinion and Order, 2019 WL 1061677 (S.D. W. Va. Mar. 6, 2019).

[27] *Mallory*, ECF Doc. #60, 2019 WL 252530, at *3.

[28] *Mallory*, ECF Doc. #72, 2019 WL 1061677, at *6.

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 12

that hemp is produced under the 2014 Farm Bill or under a State, Tribal, or Departmental plan under the 2018 Farm Bill. It is also a final judgment of the Southern District of West Virginia court, and not a preliminary ruling as with the District of Idaho magistrate's opinion.[29]

In matters of statutory interpretation, the text of the statute governs. One must read that text in its entirety and give every word meaning. The reference to "other Federal laws" must be given meaning, and that language clearly refers to the Federal law that currently authorizes the production of hemp — 2014 Farm Bill § 7606. Therefore, hemp produced under that pilot authority is hemp produced in accordance with subtitle G of the AMA. States and Indian tribes may not prohibit the transportation or shipment of such hemp through that State or Tribal territory.

### D.   The 2018 Farm Bill Places Restrictions on the Production of Hemp by Certain Felons.

The 2018 Farm Bill added a new provision addressing the ability of convicted felons to produce hemp. The 2014 Farm Bill is silent on the issue. AMA § 297B(e)(3)(B) (hereafter, "Felony provision"), as added by the 2018 Farm Bill, provides:

> (B) FELONY.—
>
> (i) IN GENERAL.—Except as provided in clause (ii), any person convicted of a felony relating to a controlled substance under State or Federal law before, on, or after <u>the date of enactment of this subtitle</u> shall be ineligible, during the 10-year period following the date of the conviction—
>
> (I) to participate in the program established under this section or section 297C; and
>
> (II) to produce hemp under any regulations or guidelines issued under section 297D(a).
>
> (ii) EXCEPTION.—Clause (i) shall not apply to any person growing hemp lawfully with a license, registration, or authorization under a pilot program authorized by section 7606 of the Agricultural Act of 2014 (7 U.S.C. 5940) before <u>the date of enactment of this subtitle</u>.

7 U.S.C. § 1639p(e)(3)(B) (emphasis added). The references to "the date of enactment of this subtitle" are to subtitle G of the AMA, as added by section 10113 of 2018 Farm Bill. Therefore, the "date of enactment of this subtitle" is the date of enactment of the 2018 Farm Bill — December 20, 2018.

In explaining the Felony provision, the Conference Report notes:

> Any person convicted of a felony relating to a controlled substance shall be ineligible to participate under the [S]tate or [T]ribal plan for a 10-year period following the date of the conviction. However, this prohibition shall not apply to producers who have been lawfully participating in a [S]tate hemp pilot program as authorized by the Agricultural Act of 2014, prior to enactment of this subtitle. Subsequent felony convictions after the date of enactment of this subtitle will trigger a 10-year

---

[29] *Mallory*, ECF Doc. #72, 2019 WL 1061677, at *9 (denying the United States' motion to amend and granting the defendants' motion to dismiss). *Big Sky*, ECF Doc. #32, at 28 (denying the plaintiff's motion for preliminary injunction and noting that the court will separately issue an order setting a scheduling conference to govern the case going forward).

> nonparticipation period regardless of whether the producer participated in the pilot program authorized in 2014.

H.R. REP. NO. 115-1072, at 737 (2018).

In sum, a person convicted of a State or Federal felony relating to a controlled substance — regardless of when that conviction occurred — is ineligible to produce hemp under subtitle G of the AMA for a period of 10 years following the date of the conviction. An exception exists in clause (ii) of the Felony provision that applies to a person who was lawfully producing hemp under the 2014 Farm Bill **before December 20, 2018**, and who had been convicted of a felony relating to a controlled substance before that date. States and Indian tribes now have a responsibility to determine whether a person wishing to produce hemp in that State or Tribal territory has any Federal or State felony convictions relating to controlled substances that would make that person ineligible to produce hemp.

## III. OTHER ISSUES

There are two additional important aspects of this issue that should be emphasized.

First, the 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the production of hemp that are more stringent than Federal law. *See* AMA § 297B(a)(3) (7 U.S.C. § 1639p(a)(3)) ("Nothing in this subsection preempts or limits any law of a State or Indian tribe that . . . (i) regulates the production of hemp; and (ii) is more stringent than this subtitle."). For example, a State may continue to prohibit the growth or cultivation of hemp in that State.[30] As discussed above, however, while a State or Indian tribe may prohibit the production of hemp, it may not prohibit the interstate shipment of hemp that has been produced in accordance with Federal law.

Second, the 2018 Farm Bill does not affect or modify the authority of the Secretary of Health and Human Services ("HHS Secretary") or Commissioner of Food and Drugs ("FDA Commissioner") under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq.) and section 351 of the Public Health Service Act (42 U.S.C. § 262). *See* AMA § 297D(c) (7 U.S.C. § 1639r(c)). While AMA § 297D(b) provides that the Secretary of Agriculture shall have "sole authority" to issue Federal regulations and guidelines that relate to the production of hemp, this authority is subject to the authority of the HHS Secretary and FDA Commissioner to promulgate Federal regulations and guidelines under those FDA laws. 7 U.S.C. § 1639r(b).

---

[30] Certain states continue to prohibit the cultivation of hemp. *See* National Conference of State Legislatures, "State Industrial Hemp Statutes," *available at* http://www.ncsl.org/research/agriculture-and-rural-development/state-industrial-hemp-statutes.aspx#state (updated Feb. 1, 2019).

MEMORANDUM FOR THE SECRETARY OF AGRICULTURE
May 28, 2019
Page 14

## IV. CONCLUSION

I have analyzed the hemp provisions enacted as part of the 2018 Farm Bill and reach the following conclusions:

1. As of the enactment of the 2018 Farm Bill on December 20, 2018, hemp has been removed from schedule I of the CSA and is no longer a controlled substance.

2. After USDA publishes regulations implementing the hemp production provisions of the 2018 Farm Bill contained in subtitle G of the AMA, States and Indian tribes may not prohibit the interstate transportation or shipment of hemp lawfully produced under a State or Tribal plan or under a license issued under the Departmental plan.

3. States and Indian tribes may not prohibit the interstate transportation or shipment of hemp lawfully produced under the 2014 Farm Bill.

4. A person with a State or Federal felony conviction relating to a controlled substance is subject to a 10-year ineligibility restriction on producing hemp under subtitle G of the AMA. An exception applies to a person who was lawfully growing hemp under the 2014 Farm Bill before December 20, 2018, and whose conviction also occurred before that date.

The 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the production of hemp that are more stringent than Federal law. Additionally, the 2018 Farm Bill does not affect or modify the authority of the HHS Secretary or FDA Commissioner to regulate hemp under applicable FDA laws.

# Congress of the United States
## Washington, DC 20515

March 29, 2021

The Honorable Merrick Garland  
Attorney General of the United States  
Department of Justice  
400 6th Street, NW  
Washington, DC 20001

The Honorable Thomas J. Vilsack  
Secretary of the Department of Agriculture  
United States Department of Agriculture  
1400 Independence Ave., S.W.  
Washington, DC 20250

Dear Mr. Attorney General and Mr. Secretary:

We are writing to you to express our concern over the serious unintended consequences that could arise from the Drug Enforcement Agency's (DEA) Interim Final Rule (IFR) issued for hemp on August 21, 2020. In order to address these concerns and not cause unnecessary damage to the hemp industry, we encourage the DEA and the U.S. Department of Agriculture (USDA) to collaborate with the hemp industry to resolve the issues raised by the IFR, and to clarify publicly that USDA is the primary Federal agency in charge of regulating the transportation, processing, sale, or use of hemp and in-process hemp extract.

When Congress passed the 2018 Farm Bill, it was our intent to vest primary regulatory authority over the production of hemp with USDA. To that end, USDA issued an Interim Final Rule for the "Establishment of a Domestic Hemp Production Program" more than a year ago and finalized that rule on January 15, 2021. It is our understanding that this final rule, with an effective date of March 22, 2021, is currently being reviewed by the Biden Administration

As leaders on agriculture policy in the U.S. House of Representatives, it is our underlying goal to ensure that Federal regulations concerning hemp are fair, easily understood, and consistent across agencies. When inconsistencies in regulation arise, it is our farmers who are primarily harmed. We believe that stronger collaboration between UDSA, DOJ, other Federal agencies, and hemp industry stakeholders could help alleviate many issues impacting our hemp producers.

Congress did not intend the 2018 Farm Bill to criminalize any stage of legal hemp processing, and we are concerned that hemp grown in compliance with a USDA-approved plan could receive undue scrutiny from the DEA as it is being processed into a legal consumer-facing product under this IFR. That is why the 2018 Farm Bill's definition of hemp was broadened from the 2014 Farm Bill's version to include derivatives, extracts, and cannabinoids. It was our intent that derivatives, extracts, and cannabinoids would be legal if these products were in compliance will all other Federal regulations. To highlight our intent, the following report language was included with H.R. 133, the Consolidated Appropriations Act of 2021.

PRINTED ON RECYCLED PAPER

EXHIBIT 2

"[t]he USDA shall develop regulations, within existing authority, that protect the transportation, processing, sale, or use of hemp and in-process hemp extract, that may temporarily exceed a delta-9 THC concentration of 0.3%, including in-process hemp extract that was: (1) produced from hemp that meets the definition of hemp under 7 USC §1639o; (2) cultivated in accordance with subtitle G of the Agricultural Marketing Act of 1946 [7 U.S.C. 1639o et seq.] (as added by section 10113 of the Agriculture Improvement Act of 2018) or section 7606 of the Agricultural Act of 2014 [7 USC 5940]; (3) not packaged as a finished product; and (4) not sold or offered for sale as a finished product to consumers.

We understand from our constituents that hemp processors have been confused about the legality of their processing operations. Because of this confusion, some processors have halted operations altogether. In addition to economic impacts, we are concerned that the lack of a uniform, risk appropriate Federal regulatory approach will stifle innovation, advancement, and product development in an industry poised for robust growth in the coming years.

To address our concerns, we would hope that your agencies would consider jointly meeting with industry stakeholders to resolve concerns with DEA's regulations. Given USDA's current review of its hemp regulations, we believe that this moment presents the best opportunity to ensure consistency across Federal agencies that will ultimately benefit our farmers and hemp-related businesses. Moving forward, we would also request proactive and continued collaboration between your agencies on any future regulatory actions that could impact hemp producers and processors. Thank you for your consideration, and our offices look forward to your timely response.

Sincerely,

David Scott
Chairman
House Agriculture Committee

Sanford D. Bishop, Jr.
Chairman
House Appropriations Subcommittee on Agriculture, Rural Development. Food and Drug Administration, and Related Agencies