Jenny L. Craig, #6-3944
Kellsie J. Singleton, #7-5565
Jonathan D. Sater, #7-5264
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7977
(307) 777-5034 Facsimile
jenny.craig1@wyo.gov
kellsie.singleton1@wyo.gov
jd.sater@wyo.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| GREEN ROOM LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 2:24-CV-128 |
| STATE OF WYOMING et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER OR ALTERNATIVE MOTION FOR PRELIMINARY INJUNCTION

The Wyoming Attorney General's Office, on behalf of the State of Wyoming; Governor Mark Gordon, in his official capacity; Attorney General Bridget Hill, in her official capacity; Wyoming Department of Agriculture Director Doug Miyamoto, in his official capacity; Sylvia Miller Hackl, Laramie County District Attorney, in her official

capacity; and Dan Itzen, Natrona County District Attorney, in his official capacity; hereby responds to and seeks denial of Plaintiffs' motion for a temporary restraining order ("TRO"), or in the alternative, for preliminary injunction.

## BACKGROUND

Plaintiffs filed their Complaint for Declaratory and Injunctive Relief asserting violations of Plaintiffs' constitutional rights. (Complaint at 4). Specifically, Plaintiffs are challenging Senate Enrolled Act 24 (hereinafter "SEA 24") which, effective July 1, 2024, clarifies that synthetic tetrahydrocannabinol ("THC"), synthetic cannabinoids, and psychoactive substances are not included in the definition of "hemp" in Wyo. Stat. Ann. § 11-51-101; and prohibits persons and hemp licensees from adding, altering, or inserting a synthetic substance into hemp or hemp products produced, processed, or sold under the Wyoming Hemp Program. *(Id.* at 13-15); *see* 2024 Wyo. Sess. Laws 101-103.

Plaintiffs allege SEA 24 is preempted by the Agriculture Improvement Act of 2018, Pub. L. 115-334 (the "2018 Farm Bill"), impermissibly restricts interstate commerce of hemp in violation of the Commerce Clause, constitutes a regulatory taking, and is unconstitutionally vague under the Due Process Clause of the Fifth and Fourteenth Amendments. (Complaint at 13-15); (Pls.' Br. in Supp. of Mot. for TRO or Alternative Mot. for Prelim. Inj. (hereinafter "Pls.' Br.") at 7-20). Plaintiffs assert in their brief that a TRO or preliminary injunction is necessary because "monetary losses are unknowable and potential criminal sanctions constitute irreparable harm," the threatened injury of harm to Plaintiffs outweighs the harm to Defendants, and a TRO/preliminary injunction is in the public's interest. (Pls.' Br. at 20-22).

**LEGAL STANDARD FOR GRANTING A TEMPORARY RESTRAINING**

**ORDER OR PRELIMINARY INJUNCTIONS**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted) (emphasis removed). Because a preliminary injunction is an extraordinary remedy, "the right to relief must be clear and unequivocal." *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 752 (10th Cir. 2024) (citation omitted). A party seeking preliminary relief must demonstrate: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Id.* (citing *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). A preliminary injunction is never awarded as of right, and if a plaintiff fails to meet its burden on any of these four requirements, its request must be denied. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Diné Citizens Against Ruining our Env't*, 839 F.3d 1276, 1281 (10th Cir. 2016).

The Tenth Circuit has recognized three types of preliminary injunctions that are disfavored and require a strong showing on the likelihood of success on the merits and on the balance of the harms: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."

3

*State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883-84 (10th Cir. 2021) (citation and internal quotation marks omitted).

Plaintiffs are requesting an injunction that fits the third disfavored category. This type of injunction could afford Plaintiffs all the relief that it could recover at the conclusion of a full trial on the merits because Plaintiffs are seeking a declaration that SEA 24 is unconstitutional and are requesting attorney fees and costs. (Complaint at 21).

## ARGUMENT

### 1.    Standing

In addition to addressing the merits of the motion for TRO or preliminary injunction, the State asserts Plaintiffs lack Article III standing. To establish Article III standing, the Plaintiff bears the burden of demonstrating:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bronson v. Swensen,* 500 F.3d 1099, 1106 (10th Cir. 2007) (citations omitted). "Each plaintiff must have standing to seek each form of relief in each claim." *Id.*

First, while each affidavit asserts that the individual who authored the affidavit is "one of the Plaintiffs in this action," the affidavits do not provide sufficient information as to who these individuals are. Except for the Flint affidavit, none of the affiants are named as Plaintiffs on the Complaint. Because the affiants have not explained their relation to the Plaintiff companies—whether owners, shareholders, managers, employees, or otherwise— the Court should deny the motion for failure to establish standing. (*See* Pls.' Ex. 1-8).

Relying on the affidavits, it appears there are three categories of Plaintiffs in this action—consumers, growers/producers, and retailers. Amanda Flint is a consumer of the synthetic hemp product, Delta-8 THC. (Pls.' Ex. 2 at 2-3). Platte Hemp Company, Flower Castle Elevated Wellness, Mountain High Wellness, Up N Smoke II, and Cindi's CBD and Vape appear to be retail establishments. (Pls.' Ex. 1, 3-6). PolyXtracts "process[es] hemp, manufacture[s] CBD extracts, [and] sell[s] isomer hemp products." (Pls.' Ex. 7 at 2). Greybull River Farms is a producer of hemp. (Pls.' Ex. 8 at 2).

In *Duke's Investments LLC v. Char*, the United States District Court of Hawaii held that for Plaintiff to have standing in the preemption claim, Plaintiff must only allege that it is engaged in the interstate transport of hemp that is produced from licensed entities. *Duke's Investments LLC v. Char*, No. 22-00385, 2022 WL 17128976, at 6 (D. Haw. Nov. 22, 2022) (denying the request for a TRO because all four factors favored defendants).

It is unclear from the Plaintiffs' brief, accompanying affidavits, and Complaint whether each plaintiff is engaged in the interstate transport of hemp that is produced from licensed entities. *See* (Pls.' Br. and Pls.' Ex. 1-8); *see also* (Complaint). The supporting affidavits do not indicate if the retailer and producer Plaintiffs have customers solely within the State of Wyoming or whether their operations extend to interstate commerce. *See generally* (Pls.' Ex. 1-8). In fact, one of the affidavits appears to allege that the commerce that will be affected is solely intrastate. (Pls.' Ex. 7 at 2) ("The business and all revenue

will only switch to illegal products that are untested or will all flow to legal states like Colorado.").

The Complaint generally alleges that Plaintiffs "cultivate, wholesale, distribute, and retail hemp plants and hemp-derived products in and out of Wyoming" and operated in a supply chain in and outside of the State. (Complaint at 3). However, because Plaintiffs have not alleged that they or the producers within these supply chains are licensed entities, Plaintiffs have not shown that they are engaged in the interstate transport of hemp and therefore lack standing to proceed. *See Duke's Investments LLC*, 2022 WL 17128976, at 5; *see also C.Y. Wholesale, Inc. v. Holcomb*, No. 1:19-cv-02659, 2021 WL 694217, at 6 (S.D. Ind. Feb. 22, 2021) (finding no standing where Plaintiffs alleged that they ship and transport hemp only from unlicensed producers).

Furthermore, Amanda (Mandy) Flint is solely a consumer of Delta-8 THC. (Pls.' Ex. 2 at 2-3) Consumers in this action do not have standing because they cannot satisfy the injury-in-fact requirement. In order to establish an injury-in-fact, consumer plaintiffs must demonstrate that they intend to engage in a course of conduct arguably affected with a constitutional interest but proscribed by the challenged statute and there is a credible threat of prosecution. *Frank v. Lee*, 84 F.4th 1119, 1133 (10th Cir. 2023). There is, however, no constitutional right to use synthetic hemp products such as Delta-8 THC. The 2018 Farm

Bill covers regulation only for production of industrial hemp. 7 U.S.C. §§ 1639p, 1639q. Therefore, Flint also has not shown that she has standing.

For all of these reasons, the Court should deny the motion on standing grounds alone.

### 2. Substantial likelihood of success on the merits

In order to receive preliminary injunctive relief, Plaintiffs must first show a substantial likelihood that they will succeed on the merits of their claim. *Harmon v. City of Norman, Okla.*, 981 F.3d 1141, 1146 (10th Cir. 2020). The movant must make a prima facie case showing that there is a reasonable probability they are entitled to the relief sought. *Id.*

### A. Conflict Preemption

Plaintiffs first allege that SEA 24 is preempted by the 2018 Farm Bill. (Pls.' Br. at 7-14). "State law is pre-empted to the extent of any conflict with a federal statute." *Evans v. Diamond,* 957 F.3d 1098, 1100 (10th Cir. 2020) (citing *Hillman v. Maretta,* 569 U.S. 483, 490 (2013)). Specifically, Plaintiffs allege conflict preemption, which occurs "where it is impossible for a private party to comply with both state and federal law and where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000)).

SEA 24's definition of "hemp" is consistent with the federal definition of hemp; therefore, Plaintiffs' claim of conflict preemption must fail. "Hemp" is defined in the 2018 Farm Bill as "the plant Cannabis sativa L. and any part of that plant, including the seeds

thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). The definition of "hemp" in Wyoming is:

> "[A]ll parts, seeds, and varieties of the plant cannabis sativa l., whether growing or not, or a product, derivative, extract, cannabinoid, isomer, acid, salt or salt of isomer made from that plant with no synthetic substance and with a THC concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis when using post-decarboxylation or another similarly reliable testing method[.]"

Wyo. Stat. Ann. § 11-51-101(a)(iii). SEA 24's only change to the definition of hemp was to make clear that synthetic substances fall outside the definition of "hemp". 2024 Wyo. Sess. Laws 101-103. The DEA has confirmed that synthetic substances are not hemp, even if they molecularly resemble chemicals contained in hemp. U.S. Dep't of Just.,  Drug Enf't Admin., Opinion Letter (Feb. 13, 2023), https://www.documentcloud.org /documents/23608864-dea-thco-response-to-kight?responsive=1&title=1.

The DEA further confirmed that—along with tetrahydrocannabinol—synthetic equivalents, synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity are all Schedule I controlled substances under the Controlled Substances Act. *Id.* A chemical created by a synthetic process is not a part of the plant and therefore cannot be considered part of the plant. It may resemble chemicals derived from cannabis plants, or even be molecularly the same as a substance derived from a cannabis plant, but it is not part of the plant. "[T]he statutory definition of 'hemp' is limited to materials that are derived from the plant Cannabis sativa L." Implementation of

the Agriculture Improvement Act of 2018, 85 Fed. Reg. 51639-01, 51641 (Aug. 21, 2020). Furthermore, because the Department of Justice has confirmed that these synthetic substances fall outside the definition of "hemp," it cannot be said that SEA 24 stands as an obstacle to the execution of the full purposes and objectives of Congress. *See* U.S. Dep't of Just., Drug Enf't Admin., Opinion Letter (Feb. 13, 2023), https://www.documentcloud.org/documents/23608864-dea-thco-response-to-kight?responsive=1&title=1.

SEA 24 does not prohibit anything that federal law does not already bar, and as such, it is not preempted. But even if SEA 24 did prohibit sales of hemp-derived products that federal law permits, it still would not be preempted.

Federal law does not give hemp growers or retailers a right to sell hemp products. The 2018 Farm Bill specifically states that "[n]othing in [7 U.S.C. § 1639p] preempts or limits any law of a State or Indian tribe that regulates the production of hemp and is more stringent than the [federal statute]." 7 U.S.C. § 1639p(a)(3)(A). Moreover, Wyoming's hemp statute aligns with the 2018 Farm Bill's rule of construction stating that "[n]othing in this title or an amendment made by this title prohibits the interstate commerce of hemp [as defined in 7 U.S.C. § 1639o(1)] or hemp products." Pub. L. No. 115-334 § 10114(a) (codified as 7 U.S.C. § 1639o note). Similarly, Wyo. Stat. Ann. § 11-51-102 allows any adult to possess, purchase, sell, transport, and use hemp and hemp products. Wyo. Stat. Ann. § 11-51-102(b). Therefore, Plaintiffs are unlikely to succeed on the conflict preemption claim, and this Court should deny the motion.

### B.    Commerce Clause

Plaintiffs also assert that SEA 24 prohibits the possession and transportation of hemp through Wyoming, impermissibly restricting interstate commerce in violation of the Commerce Clause. (Pls.' Br. at 15-16). "[A]bsent discrimination, a State may exclude from its territory, or prohibit the sale therein of any articles which, in its judgment, fairly exercised, are prejudicial to the interests of its citizens." *Nat'l Pork Prod. Council v. Ross*, 598 U.S. 356, 369 (2023) (citation and internal quotation marks omitted). "[T]he Commerce Clause prohibits the enforcement of state laws driven by ... economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id.* (citations and internal quotation marks omitted). Plaintiffs do not allege that SEA 24 seeks to advantage in-state businesses or disadvantage out-of-state competitors. In fact, Plaintiffs' position seems to be that SEA 24 primarily burdens in-state hemp producers and retailers.

In order to show a violation of the commerce clause, Plaintiffs "must plead facts 'plausibly' suggesting a substantial harm to interstate commerce; facts that render that outcome a 'speculative' possibility are not enough." *Id.* at 385. "However, States still 'retain broad power to legislate protection for their citizens in matters of local concern such as public health,' and 'not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States.'" *AK Indus. Hemp Ass'n, v. Alaska Dep't of Nat. Res.*, No. 3:23-cv-00253, 2023 WL 8935020, at 3 (D. Alaska Dec. 27, 2023) (quoting *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976).

> Where the statute regulates even-handedly to effectuate a legitimate local
> public interest, and its effects on interstate commerce are only incidental, it
> will be upheld unless the burden imposed on such commerce is clearly
> excessive in relation to the putative local benefits. If a legitimate local
> purpose is found, then the question becomes one of degree. And the extent
> of the burden that will be tolerated will of course depend on the nature of the
> local interest involved, and on whether it could be promoted as well with a
> lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). In *AK Industrial Hemp Association*,

a restriction on synthetic hemp products similar to Wyoming's was enacted in Alaska. *AK

Indus. Hemp Ass'n,* 2023 WL 8935020, at 2. The federal court used the *Pike* balancing test

to conclude that Plaintiffs neither discussed nor produced sufficient evidence to show that

any burden imposed on interstate commerce was excessive when weighed against the

public health benefit of the newly enacted regulations. *Id.* at 4. The court further relied on

the Alaska Department of Natural Resources' Commissioner's statement that this law

targeted a public health and safety concern and that the hemp program was never intended

to allow intoxicating products. *Id.* at 4.

Wyoming has identified a legitimate local purpose for SEA 24—protecting children

and adults from unregulated substances marketed in the state. WyoFile, *Wyoming

lawmakers look to control delta-8 without harming hemp* (Sept. 19, 2023),

https://wyofile.com/wyoming-lawmakers-look-to-control-delta-8-without-harming-hemp/

(citing to lack of Delta-8 regulation and reports of its usage causing emergency room visits

from teens); *see also* U.S. Food & Drug Administration, *FDA Issues Warning Letters to

Companies Illegally Selling CBD and Delta-8 THC Products* (May 4, 2022),

https://www.fda.gov/news-events/press-announcements/fda-issues-warning-letters-companies-illegally-selling-cbd-and-delta-8-thc-products (noting dangers to consumers of Delta-8 THC).

As for the burden on interstate commerce, Plaintiffs have not produced sufficient evidence to show that any burden imposed on interstate commerce was excessive when weighed against the public health benefits of SEA 24. Plaintiffs have not shown a likelihood of success on the merits of their commerce clause claim.

### C.  Regulatory Taking

Plaintiffs also argue that SEA 24 results in an "impermissible regulatory taking because it effectively creates a total ban of hemp containing any amount of tetrahydrocannabinol," effectively banning all hemp-derived products containing any amount of THC, even if below 0.3%. (Pls.' Br. at 16). This claim is without merit.

When determining whether a use restriction amounts to a regulatory taking, the court looks to the three-factor test in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), considering the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021).

SEA 24 simply limits the addition of synthetic substances to hemp or hemp products and does not infringe on "the possession, purchase, sale, transportation and use of hemp and hemp products." 2024 Wyo. Sess. Laws 102. It does not create a total ban on hemp but, rather, seeks to restrict the addition of synthetic and psychoactive substances to

otherwise legal hemp. *Id.* Hemp continues to remain legal to possess, purchase, sell, and transport in the State of Wyoming. Wyo. Stat. Ann. § 11-51-102(b).

Plaintiffs allege that SEA 24 criminalizes cannabidiol ("CBD"), asserting that CBD is understood to be "psychoactive" by industry experts. (Pls.' Br. at 6). This allegation, without citation, is insufficient to show a likelihood of success on the merits. To the contrary, the U.S. Centers for Disease Control and Prevention ("CDC") concludes that "CBD is not impairing, meaning it does not cause a "high." U.S. Centers for Disease Control and Prevention, *Cannabis and Public Health* (Feb. 15, 2024), https://www.cdc.gov /cannabis/about/about-cbd.html. Notably, the CDC goes on to say, "Individuals should be careful to not mistake THC products for hemp or CBD products … Products containing THC can result in psychoactive effects and adverse events." *Id.* The CDC also issued a health advisory wherein it explained to the public that "[t]he cannabis plant contains more than 100 cannabinoids, including THC, which is psychoactive (i.e., impairing or mind-altering) and causes a 'high' [and] CBD is another active cannabinoid found in the cannabis plant that is not psychoactive and does not cause a 'high.' Centers for Disease Control and Prevention, *Increases in availability of cannabis products containing Delta-8 THC and reported cases of adverse events* (Sep. 14, 2021), https://stacks.cdc.gov/view/cdc/109759. Moreover, the Ninth Circuit referred to substances excluded from the definition of marijuana under 21 U.S.C. § 802(16) as "non-psychoactive hemp." *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 357 F.3d 1012, 1013 n.2 (9th Cir. 2004).

Additionally, because Plaintiffs' affidavits do not indicate what percentage of their businesses contain natural hemp products versus synthetically-altered substances,

Plaintiffs have not shown the economic impact of SEA 24 nor that the amendment has taken all beneficial use of their business. Plaintiffs have not shown a likelihood of success on the merits of their regulatory taking claim.

### D.    Void for Vagueness

Finally, Plaintiffs assert SEA 24 is unconstitutionally vague under the Due Process Clause of the Fifth and Fourteenth Amendments. (Pls.' Br. at 18-20). A court may find a statute to be unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1233 (10th Cir. 2023) (citation and internal quotation marks omitted). "But the Constitution does not … impose impossible standards of specificity, and courts should remain ever mindful that general statements of the law are not inherently incapable of giving fair and clear warning." *Id.* (citation and internal quotation marks omitted).

One way Plaintiffs argue that the SEA 24 is vague is that "psychoactive substance" is an undefined term that is overly broad and could "potentially ban any hemp-derived cannabinoid product, including CBD isolate with no THC." (Pls.' Br. at 19). That is an unreasonable interpretation of SEA 24. Though not defined in the statute itself, the term "psychoactive substance" is recognized in the industry. The DEA defines a "psychoactive substance" as a mind-altering drug. U.S. Dep't of Just./Drug Enf't Admin., *Drug Fact Sheet*, https://www.dea.gov/sites/default/files/2020-06/Marijuana-Cannabis-2020_0.pdf. The defining difference between CBD and THC is the psychoactive component. U.S.

Centers for Disease Control and Prevention, *Cannabis and Public Health* (Feb. 15, 2024), https://www.cdc.gov/cannabis/about/about-cbd.html.

Plaintiffs also seem to argue that it is impossible to grow a reasonable yield of hemp under the current language of the law. (Pls.' Br. at 19). However, the only change to the definition of "hemp" in SEA 24 is the addition that hemp cannot contain "any synthetic substance," or "psychoactive substance" containing more than three-tenths of one percent (0.3%) THC. As addressed previously, SEA 24's definition of "hemp" is consistent with the federal definition of hemp. *Compare* 7 U.S.C. § 1639o(1) *with* Wyo. Stat. Ann. § 11-51-101(a)(iii). Moreover, Plaintiffs' complaints as to how difficult it will be to comply with the new statute does not, in and of itself, make it unconstitutionally vague.

Given that Plaintiffs cannot demonstrate a substantial likelihood of success on the merits, this Court should deny the preliminary injunction.

### 3.     Irreparable harm

Plaintiffs assert in their motion that a TRO or preliminary injunction is necessary because "monetary losses are unknowable and potential criminal sanctions constitute irreparable harm." (Pls.' Br. at 20).

"To show a threat of irreparable harm, a plaintiff must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (citation and internal quotation marks omitted). Further, irreparable harm occurs if the injury cannot be remedied following a final determination on the merits. *Id.* Economic harm does not generally constitute irreparable harm since economic losses can be compensated for in monetary

damages. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical. Irreparable harm is not harm that is merely serious or substantial." *Id.* (citation and internal quotation marks omitted).

Moreover, even with claims of unconstitutionality, a court will not enjoin the enforcement of a criminal statute "since such a result seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism[.]" *Blazier v. Larson*, 443 Fed. Appx. 334, 337 (10th Cir. 2011) (citing *Wooley v. Maynard*, 430 U.S. 705, 712-13 (1977)). While not absolute, to justify an injunction under such a scenario, "there must be exceptional circumstances and a clear showing that an injunction is necessary" to protect one's constitutional rights. *Id.*

Plaintiffs' have not established irreparable harm. Their brief merely states that monetary losses are "unknowable" and states without any factual support that Plaintiffs' inventory of hemp-derived products will be "utterly worthless." (Pls.' Br. at 20-21).

The affidavits are likewise wholly insufficient to support of a TRO/preliminary injunction. (*See* Pls.' Br. at 20-21). The Court should disregard the affidavits because they are fraught with hearsay and speculation. *See e.g.*, (Pls.' Ex. 1 at 2 (speculating that the new law "may cause some individuals to revert to using opioids and other addictive substances" and quoting from customer reviews of the business)); (Pls.' Ex. 2 at 3 (speculating that SEA 24 will not allow the customer to have "safe access to medicine" in Wyoming)); (Pls.' Ex. 3 at 2 (asserting that discontinuation of products outlawed by SEA 24 will disrupt customers' "treatment regimens, potentially leading to adverse health

effects")); (Pls.' Ex. 5 at 3 (alleging the legislation will deprive the community of essential therapeutic products)); (Pls.' Ex. 7 at 2 (asserting the law "does not curb demand and will only make the voters criminals again," and that business and revenue will switch to "illegal products that are untested or will all flow to legal states like Colorado")).

Further, the economic losses alleged in the affidavits are theoretical, not certain, and not quantifiable from the information in the affidavits. (*See generally* Pls.' Ex. 1-8). For example, the Affidavit of Alicia Watt asserts that isomer hemp products constitute a "substantial percentage" of Platte Hemp Company's sales. (Pls.' Ex. 1 at 2). The affidavit does not, however, inform this court what that percentage is, what other products the company can continue to sell, or what specific products the company asserts it can no longer sell under the new law. (*Id.*). Similarly, the Affidavit of Daisy Pavlica asserts that the "ban on isomer hemp products will not only reduce our sales but also decrease the sales tax revenue generated for the state, impacting the overall economic health of our community." (Pls.' Ex. 3 at 2). Without any information as to what these "isomer hemp products" are that the company is selling and an estimation of the reduction in sales under SEA 24, this Court cannot conclude that irreparable harm is certain, great, and actual, not merely theoretical. *See Heideman*, 348 F.3d at 1189. With the position of the State being that CBD is not a psychoactive substance and that not all isomer hemp products are banned under SEA 24, the statements in these affidavits are mere conjecture. *See Id*.

Similarly, the Affidavit of Lance Kleiderlein asserts that he, as a farm producer of hemp, will be unable to continue business and sell in the domestic market (Pls.' Ex. 8 at 2). However, SEA 24 simply limits the addition of synthetic substances to hemp or hemp

products and does not infringe on "the possession, purchase, sale, transportation and use of hemp and hemp products." 2024 Wyo. Sess. Laws 102.

Aside from the economic losses, fear of criminal enforcement is also insufficient to enjoin enforcement of SEA 24. *See Blazier*, 443 Fed. Appx. at 337 (citing *Wooley*, 430 U.S. at 712-13). Amanda Flint's affidavit states that banning Delta-8 "would make [her] a criminal." (Pls.' Ex. 2 at 3). Plaintiffs rely on *Wooley* in their motion to assert that threat of future criminal prosecutions justifies grant of injunctive relief. (Pls.' Br. at 22). However, Wooley is distinguishable from this case. *See generally Wooley*, 430 U.S. at 712. In *Wooley*, three successive prosecutions were undertaken against Mr. Maynard in the span of five weeks. *Id.* The U.S. Supreme Court found that these facts are "quite different from a claim for federal equitable relief when a prosecution is threatened for the first time" and the "threat of repeated prosecutions in the future against both him and his wife, and the effect of such a continuing threat on their ability to perform the ordinary tasks of daily life" was sufficient for injunctive relief. *Id.* None of the affidavits filed with Plaintiffs' motion suggest that there has been a prosecution in relation to SEA 24 or otherwise.

Finally, Plaintiffs' allegations of harm "are undercut by the delay with which they undertook filing this civil action to enjoin enforcement" of SEA 24. *Northern Virginia Hemp and Agriculture LLC v. Virginia*, No. 1:23-cv-1177, 2023 WL 7130853, at 12 (E.D. Va. Oct. 30, 2023) (citing *Quince Orchard Valley Citizens Ass'n*, 872 F.2d 75, 80 (4th Cir. 1989) (A delay in initiating a preliminary injunction proceeding may "indicate an absence of the kind of irreparable harm required to support a preliminary injunction.")). Like the plaintiffs in Northern Virginia, who waited months to file their lawsuit, Plaintiffs did not

take immediate action when SEA 24 was signed into law on March 7, 2024; rather Plaintiffs waited to file the action until three days before the law went into effect. *Northern Virginia Hemp and Agriculture LLC*, 2023 WL 7130853, at 12-13 (denying plaintiffs' motion for a preliminary injunction partly because plaintiffs waited five months to file their lawsuit).

Plaintiffs have not demonstrated that an injunction is required to avoid irreparable harm. Therefore, Plaintiffs' motion should be denied.

### 4.      Balance of Harms and Public Interest

When the government is an opposing party in a preliminary injunction, the balance of harms and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020). "Under the heightened disfavored-injunction standard, the Plaintiffs need to make a strong showing that the balance of harms tips in their favor." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019).

Plaintiffs must these factors weigh in their favor. (Pls.' Br. at 21-23). Specifically, Plaintiffs assert that the status quo is being disrupted by the implementation of SEA 24 because hemp-derived products such as Delta-8 were legal. (*Id.* at 21-22). They further argue that because they believe SEA 24 to be unconstitutional, the public interest is served by preventing enforcement of the act. (*Id.* at 22).

The "status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (citation and internal quotation marks omitted). The Tenth Circuit has said that the court should look to "the reality of the existing status and

relationship between the parties and not solely to the parties' legal rights." *Id.* Plaintiffs argue the status quo is maintaining the legality of possessing, selling, and transporting synthetic THC, synthetic cannabinoids, and psychoactive substances in Wyoming. (Pls.' Br. at 22). Rather, these substances were already illegal under the law; SEA 24 sought to close a "loophole" that made it difficult for prosecution of these acts. *See* Wyoming Legislature, *Summary of Proceedings of the Joint Judiciary Committee* (Apr. 24-25, 2023), https://wyoleg.gov//InterimCommittee/2023/01-20230424Meeting%20Minutes.pdf (requesting LSO draft "a bill that clarifies the scheduling of Delta-8 THC"); WyoFile, *Wyoming lawmakers look to control delta-8 without harming hemp* (Sept. 19, 2023), https://wyofile.com/wyoming-lawmakers-look-to-control-delta-8-without-harming-hemp/ (referencing the murky legality of Delta-8 and the State's position that it was technically already illegal in Wyoming); *see also* U.S. Food & Drug Administration, *FDA Issues Warning Letters to Companies Illegally Selling CBD and Delta-8 THC Products* (May 4, 2022), https://www.fda.gov/news-events/press-announcements/fda-issues-warning-letters-companies-illegally-selling-cbd-and-delta-8-thc-products. Therefore, maintaining the status quo through an injunction is not re-legalizing Delta-8 and similar synthetic and psychoactive products. It is, instead, maintaining the status quo of producers and sellers continuing to operate their businesses outside the confines of state law without legal ramifications.

As for Plaintiffs' position that it is in the public's interest to enjoin enforcement because SEA 24 is unconstitutional, the State maintains, as reiterated throughout this

Response, that SEA 24 is constitutional and Plaintiffs are unlikely to succeed on the merits in this case.

With regard to the State, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of the people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012); *New Mexico Dep't of Game and Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1254 (10th Cir. 2017). If Plaintiffs' motion was granted, the State of Wyoming would be enjoined from enforcing or effectuating SEA 24.

An injunction would prevent the State from addressing public concerns regarding the safety of Delta-8 products and other psychoactive products, and its distribution to citizens in the State of Wyoming. The legislature sought to address these concerns through this legislation following reports of Wyoming teens ending up in emergency rooms after consumption of Delta-8. WyoFile, *Wyoming ban on delta-8, similar hemp products near finish* line (Feb. 29, 2024), https://wyofile.com/wyoming-ban-on-delta-8-similar-hemp-products-nears-finish-line/. Following an increase in sales and consumption of Delta-8 THC, the U.S. Food and Drug Administration collected data and sought to inform the public about serious health risks associated with the consumption of the product. U.S. Food & Drug Administration, *5 things to Know about Delta-8 Tetrahydrocannabinol – Delta-8 THC* (May 4, 2022), https://www.fda.gov/consumers/consumer-updates/5-things-know-about-delta-8-tetrahydrocannabinol-delta-8-thc.

In May of 2022, the FDA issued warning letters to companies selling CBD and Delta-8 THC products stating that "[a]ny delta-8 THC product claiming to diagnose, cure, mitigate, treat, or prevent diseases is considered an unapproved new drug," citing concerns

about the potential health effects of Delta-8 THC products demonstrated in an increase in calls to national poison control centers and an increase in hospitalizations and emergency room visits. U.S. Food & Drug Administration, *FDA Issues Warning Letters to Companies Illegally Selling CBD and Delta-8 THC Products* (May 4, 2022), https://www.fda.gov /news-events/press-announcements/fda-issues-warning-letters-companies-illegally-selling-cbd-and-delta-8-thc-products.

For these reasons, the possible harm to the State of Wyoming outweighs the harm to Plaintiffs. Furthermore, the public interest is best served through a denial of the preliminary injunction.

## CONCLUSION

For all these reasons, Plaintiffs' motion should be denied.

DATED this 9th day of July, 2024.

/s/ Jenny L. Craig
Jenny L. Craig, # 6-3944
Deputy Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-6862
jenny.craig1@wyo.gov

/s/ Kellsie J. Singleton
Kellsie J. Singleton, #7-5565
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-6743
kellsie.singleton1@wyo.gov

*/s/ Jonathan D. Sater*
Jonathan D. Sater, #7-5264
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-3537
jd.sater@wyo.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served this 9th day of July, 2024, by the following means:

|                                           |             |
|-------------------------------------------|-------------|
| Donna D. Domonkos                         | VIA CM/ECF  |
| Brittany Thorpe                           |             |
| Domonkos & Thorpe, LLC                    |             |
| 1914 Logan Avenue                         |             |
| Cheyenne, Wyoming 82001                   |             |
| donna@dandt.llc                           |             |
| brittany@dandt.llc                        |             |

Thomas A. Thompson                         VIA EMAIL
MacPherson & Thompson, LLC
PO Box 999
Rawlins WY 82301
tthompson@wyomingattorneys.net

Nathan Henkes                              VIA EMAIL
Campbell County and Prosecuting Attorney
500 South Gillette Ave, Ste B200
Gillette, WY  82716
nathan.henkes@campbellcountywy.gov

Clayton Melinkovich                        VIA EMAIL
Sublette County and Prosecuting Attorney
PO Box 1010
Pinedale, WY  82941
clayton.melinkovich@sublettecountywy.gov

*/s/ Robin Clodgu*
Robin Clodgu, Paralegal
Office of the Wyoming Attorney General