

**FILED**

*12:15 pm, 8/15/24*

**Margaret Botkins**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

GREEN ROOM LLC, et al.,

    Plaintiffs,

    vs.

STATE OF WYOMING, et al.,

    Defendants.

Case No.   24-CV-128-KHR

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants' Motion to Dismiss. [ECF No. 31]. Defendants seek dismissal of all of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). They argue they are entitled to immunity under the Eleventh Amendment and even if one of the Defendants is properly named, Plaintiffs have failed to state a claim for which relief can be granted. Plaintiffs oppose on all grounds. [ECF No. 33]. This Court recently entered an Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction on July 19, 2024. [ECF No. 30]. Much of the analysis remains the same and the Court will incorporate the reasoning and cited authority from that Order herein. Accordingly, the Court finds Defendants' Motion should be granted and Plaintiffs' claims are dismissed with prejudice.[1]

---

[1] The Court notes that Plaintiffs have filed a notice of appeal. [ECF No. 34]. "Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction, in an appeal from an order granting or denying a preliminary

BACKGROUND

The Court will repeat the background information contained in the Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction to provide context. The Agricultural Improvement Act of 2018 (the "2018 Farm Bill") was signed into law on December 20, 2018. [ECF No. 1, at 3]. A significant change in the 2018 Farm Bill is that it removed hemp from the Controlled Substances Act. *Id.*; *see also* 7 U.S.C. § 1639o(1) & 21 U.S.C. § 802(16)(B)(i). Under § 1639o(1), the term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. 7 U.S.C.A. § 1639o. In general, the 2018 Farm Bill "authorizes states to legalize hemp and regulate its production within their borders but generally precludes states from interfering with the interstate transportation of hemp." *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1168 (10th Cir. 2023).

In 2019, Wyoming enacted legislation permitting the sale of hemp and its production, subject to certain restrictions and regulations. Wyo. Stat. Ann. §§ 11-51-101 through 107. Wyoming's legislation defined hemp similarly to the 2018 Farm Bill's definition. "'Hemp' or 'hemp product' means all parts, seeds and varieties of the plant cannabis sativa l., whether growing or not, or a product, derivative, extract, cannabinoid,

---

injunction, a district court may nevertheless proceed to determine the action on the merits." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 791 (10th Cir. 2013) (quoting *U.S. v. Price*, 688 F.2d 204, 215 (3d Cir.1982)). The Court will proceed to rule on the pending Motion to Dismiss as it accelerates the disposition of this case and allows review of the case on the merits, rather than just the preliminary injunction. It will also allow Defendants to raise any objections they may have to this Court's rulings.

isomer, acid, salt or salt of isomer made from that contains no more than three-tenths of one percent (0.3%) on a dry weight basis when using post-decarboxylation or another similarly reliable testing method." Wyo. Stat. Ann. § 11-51-101. After its enactment, Plaintiffs developed business for the production and sale of hemp, operating in accordance with Wyoming's statutory scheme for the past five years. However, the Wyoming Legislature recently passed amendments to the 2019 statutes during the 2024 legislative session. Senate Enrolled Act No. 24, 2024 Wyo. Laws Ch. 56 (S.F. 32), sec. 1, Wyo. Stat. Ann. § 11-51-101 through 104, Wyo. Stat. Ann. § 35-7-1014, 1063. Those changes have led to the current dispute.

As amended, § 11-51-101(a)(iii) now defines hemp as "all parts, seeds and varieties of the plant cannabis sativa l., whether growing or not, or a product, derivative, extract, cannabinoid, isomer, acid, salt or salt of isomer made from that plant **with no synthetic substance and** with a THC concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis when using post-decarboxylation or another similarly reliable testing method." (bold indicates new statutory language). A "'synthetic substance' means synthetic THC, synthetic cannabinoid or any other drug or psychoactive substance." § 11-51-101(a)(viii). It further expanded the definition of THC to include "[p]sychoactive analogs of tetrahydrocannabinol as defined by W.S. 14–3–301(a)(xi)" and "[a]ny psychoactive structural, optical or geometric isomers of tetrahydrocannabinol." § 11-51-101(a)(vii).

The Wyoming Legislature also amended the sections dealing with prohibited activities and enforcement. Subsection (f) was added to § 11-51-103 to prohibit the

3

production, processing, and sale of hemp with more than 0.3% THC on a dry weight basis. Any addition of synthetic substances into hemp was also prohibited. Wyoming Statute § 11-51-104 was amended to include "synthetic substances" for violations. The preexisting penalty for violations of Chapter 51 is a misdemeanor crime for intentional violations, punishable by up to a $750 fine and/or six months imprisonment. Wyo. Stat. Ann. § 11-51-104(c). Last, Wyoming's Controlled Substances Act was amended to include "naturally occurring" substances and specifically include "delta 8 cis or trans tetrahydrocannabinol and their optical isomers" as a prohibited substance. Wyo. Stat. Ann. § 35-7-1014(d)(xxi). Hemp, which was previously listed as an exception from the controlled substances list, now has a more narrowed exception. Wyoming Statute § 35-7-1063(b)(i) was changed as follows: "'Hemp' or 'hemp product' means all parts, seeds and varieties of the plant cannabis sativa l. or a product made from that plant with **no synthetic substances and with** a trans-delta 9–tetrahydrocannabinol (THC) **THC** concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis." (bold indicates new language and strike through indicates removal of prior language).

In sum, the Wyoming Legislature made four major changes to Wyoming's laws regulating hemp. First, it prohibits the use or inclusion of synthetic substances when making a "product, derivative, extract, cannabinoid, isomer, acid, salt or salt isomer" of hemp. Wyo. Stat. Ann. §§ 11-51-101(a)(viii), 11-51-103(f)(ii). Second, THC's definition was expanded to include any psychoactive structural, optical, or geometric isomers of tetrahydrocannabinol; which encompasses delta-8. Wyo. Stat. Ann. §§ 11-51-101(a)(vii); 14-3-301(a)(xi); 35-7-1014(d)(xxi). Third, it prohibits the production, processing, or sale

4

of hemp products with synthetic substances or more than 0.3% of THC under the expanded definition; i.e., delta-8 or other psychoactive isomers. Wyo. Stat. Ann. § 11-51-103(f)(i). Fourth, delta-8 cis or trans tetrahydrocannabinol and their optical isomers are specifically listed as controlled substances. Wyo. Stat. Ann. § 35-7-1014(d)(xxi). The amendments became effective on July 1, 2024.

Plaintiffs argue the amendments are unconstitutional because they impermissibly narrow the definition of hemp and are preempted by the 2018 Farm Bill. They allege a person can no longer possess, sell, transport, or produce the previously decriminalized hemp-derived cannabinoids in Wyoming under the new statutory scheme—specifically, cannabidiol ("CBD") and delta-8. That effect, they allege, conflicts with the 2018 Farm Bill's legalization of hemp and interstate commerce protections. As producers, transporters, and/or sellers of CBD, an isomer of THC, and delta-8 THC, the statute poses a direct harm to their businesses. While the overall claim appears to be the that the 2018 Farm Bill preempts SEA 24, Plaintiffs also claim that SEA 24 is unconstitutionally overbroad and vague. [ECF No. 1, at 13–15, 20]. The Brief in Support of Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction also argues SEA 24 constitutes a regulatory taking. [ECF No. 7, at 3].

### RELEVANT LAW

Federal courts are courts of limited jurisdiction and may only hear cases they are empowered to do so under the Constitution and by act of Congress. *Gad v. Kansas State University*, 787 F.3d 1032, 1035 (10th Cir. 2015). To challenge jurisdiction, Rule 12(b)(1) provides a party may move to dismiss a case for lack of subject matter jurisdiction. The

burden moves to the party asserting jurisdiction to prove it exists. *Lindstrom v. U.S.*, 510 F.3d 1191, 1193 (10th Cir. 2007). A dismissal for lack of subject matter jurisdiction is reviewed de novo. *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1180 (10th Cir. 2006).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may respond to a complaint with a defense for the "failure to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion, a court should "accept as true all well-pleaded factual allegations in a complaint in a light most favorable to the plaintiff." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equal probability. *Id.* A plaintiff must show more than a sheer possibility that the defendant acted unlawfully, passing the line from speculation or conceivability to plausibility. *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Labels, legal conclusions, and formulaic recitations of the elements are insufficient

to survive a motion to dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**RULING OF THE COURT**

The Court will first address the jurisdictional issues raised in Defendants Motion to Dismiss. As to the Rule 12(b)(6) arguments, the Court grants dismissal based on the reasoning in the Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. [ECF No. 30]. However, the Court will address the newly raised arguments by Plaintiffs, but those do not change the overall determination.

***Eleventh Amendment Immunity***

Under the Eleventh Amendment:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Its text affirms "that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Accordingly, it "generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998). There are three exceptions to this general prohibition.

First, a state may enact statutes that waives its immunity in certain situations. *Alden v. Maine*, 527 U.S. 706, 755 (1999). Waivers are stringently analyzed and must demonstrate an unequivocal intent to forgo the Eleventh Amendment's protections.

*Pettigrew v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013). Situations where waiver has been found are when a state consents to suit in federal court by statute, it files suit in federal court, intervenes, or removes a case to federal court. *Id.* States may also waive the Eleventh Amendment by contract. *Id.*

Second, "Congress can abrogate states' immunity when exercising its power under section 5 of the Fourteenth Amendment to the U.S. Constitution." *Arbogast v. Kansas, Dep't of Lab.*, 789 F.3d 1174, 1181 (10th Cir. 2015). Such abrogation must be unmistakably clear and made pursuant to a valid exercise of power. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 56–58 (1996). *Seminole* made clear "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at 72–73. Only when the Constitution specifies Congress may abrogate a state's sovereignty, such as the language contained in the Fourteenth Amendment, is there valid authority to overcome the Eleventh Amendment's limitations on a federal court's jurisdiction. *Id.* at 63–72.

The third exception, the *Ex parte Young* doctrine, is a bit of a misnomer. "Under the *Ex parte Young* exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021). "*Young* proceeds on the admitted fiction that a suit seeking an injunction against a state employee seeking to do his or her job is (somehow) different in substance than a suit against the state itself." *Hill v. Kemp*, 478 F.3d 1236, 1256 (10th Cir. 2007). This "official-capacity suit is, in all respects other than name, to be treated as a suit

8

against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). While the previous exceptions could provide monetary relief, *Ex parte Young* only allows for prospective equitable relief. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J. concurring) (alteration in original)).

Importantly, *Ex parte Young* only affords "declaratory and injunctive relief rather than monetary damages for alleged violations of federal law." *Hill*, 478 F.3d at 1255. "The fact that prospective relief could have financial consequences does not give rise to immunity, but when the requested relief is akin to a retrospective damages award, *Ex Parte Young* is inapplicable and the Eleventh Amendment prohibits the federal suit." *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008). Formulaic recitations to meet *Ex parte Young*'s requirements are insufficient, as the substance of the claims must be prospective and equitable. *Hill*, 478 F.3d at 1259. Keeping with the other limitations, the *Ex parte Young* exception is unavailable when Congress "has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right." *Seminole Tribe of Fla.*, 517 U.S. at 74.

Further, a claim must be "aimed against state officers acting in their official capacities, rather than against the State itself." *Hill*, 478 F.3d at 1255–56. "[T]he named state official 'must have some connection with the enforcement' of the challenged statute."

9

*Hendrickson*, 992 F.3d at 965 (10th Cir. 2021) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact." *Ex parte Young*, 209 U.S. at 157. While a special connection is not required, the state officer must have some duty to enforce the statute and willingness to do so. *Hendrickson*, 992 F.3d at 965. Such a "duty must be more than a mere general duty to enforce the law." *Id.* (quoting 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3524.3 (3d ed., Oct. 2020 update)). "Otherwise, the suit is 'merely making [the official] a party as a representative of the state' and therefore impermissibly 'attempting to make the state a party.'" *Id.* (quoting *Ex parte Young*, 209 U.S. at 157 (alteration in original)).

### Only Attorney General Hill and Director Miyamoto are Proper Defendants

Defendants assert they are all entitled to sovereign immunity under the Eleventh Amendment. Plaintiffs only respond to the arguments pertaining to Defendants Gordon, Hill, and Miyamoto. [ECF No. 33, at 3] ("Therefore, Defendants Governor Gordon, Attorney General Hill and Director Miyamoto fall under the [*Ex parte Young*] exception to Eleventh Amendment Immunity."). Seemingly, then, Plaintiffs concede that the State of Wyoming is not a proper party to this suit. This Court agrees, and even if Plaintiffs did oppose Wyoming's dismissal, it is clear that Wyoming has sovereign immunity. The State has not waived its immunity, Congress has not abrogated Wyoming's immunity, and *Ex parte Young* only applies to state representatives in their official capacity, not the state itself.

Additionally, Governor Gordon is not a proper party to the suit. Plaintiffs seem to believe his act of signing SEA 24 into law is enough to find a connection with enforcement of SEA 24. There must be some connection with the *enforcement* of the statute, not a general connection with the law itself. *Ex parte Young*, 209 U.S. at 157. Applying Plaintiffs' logic, state legislatures would then also be liable for passing the law. "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney v. Brandhove*, 341 U.S. 367, 377 1951). The immunity is absolute and stems from common law. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). While an executive order might subject a governor to suit under *Young*, simply signing an act into law is wholly insufficient. *Fowler v. Stitt*, 104 F.4th 770, 783 (10th Cir. 2024) (finding the Eleventh Amendment did not apply when a governor signed and was part of the enforcement of an executive order); *see also* Wright & Miller, Federal Practice & Procedure § 3524.3 ("a governor, who has merely a general duty to enforce state law, cannot be sued to challenge a state law that has not yet been enforced."). Plaintiffs have not provided, nor can the Court find, more than a general association between SEA 24 and Governor Gordon. As such, allowing their claims to proceed under the *Young* exception would equate to allowing a suit against the state.

Remaining then are Attorney General Hill and Director Miyamoto, who are proper parties to the suit. Defendants take issue that Plaintiffs have alleged no facts or explanation of how Hill and Miyamoto are tasked with enforcing SEA 24. In Wyoming "[t]he attorney general shall:

(i) Prosecute and defend all suits instituted by or against the state of Wyoming, the prosecution and defense of which is not otherwise provided for by law;

(ii) Represent the state in criminal cases in the supreme court;

(iii) Defend suits brought against state officers in their official relations, except suits brought against them by the state;

(iv) Represent the state in suits, actions or claims in which the state is interested in either the Wyoming supreme court or any United States court;

(v) Be the legal adviser of all elective and appointive state officers and of the county and district attorneys of the state;

(vi) When requested, give written opinions upon questions submitted to him by elective and appointive state officers and by either branch of the legislature, when in session

Wyo. Stat. Ann. § 9-1-603(a). Under subsection (c) the attorney general may also prosecute actions in districts or counties where a district or county attorney refuses. Subsection (d) allows for the attorney general to assign a member of his or her staff to prosecute a felony at the request of a district or county attorney. Suffice to say, the Wyoming Attorney General is the chief law enforcement officer of the state. *Bishop v. Smith*, 760 F.3d 1070, 1089 (10th Cir. 2014) ("An attorney general is the chief law enforcement officer of his or her jurisdiction."). "As such, he or she is charged with enforcing all of the criminal statutes on the books." *Id.*; *see also* § 9-1-603.

Moreover, SEA 24 made amendments to Wyoming's Controlled Substances Act. "The attorney general of the state of Wyoming is … designated [as] commissioner of drugs and substances control." Wyo. Stat. Ann. § 35-7-1003. "The attorney general by and with the consent of the governor may employ such personnel as necessary to administer th[e controlled substances] act." Wyo. Stat. Ann. § 35-7-1004. There is more than a sufficient connection between Defendant Hill and enforcement of SEA 24. The act directly relates to her role as the commissioner of drugs and substances control and its administration,

because it amends the controlled substances list. Wyo. Stat. Ann. § 35-7-1003. Any charges under SEA would invoke the Wyoming Attorney General's Office on appeal to the Wyoming Supreme Court. Wyo. Stat. Ann. § 9-1-603(a)(ii). Defendant Hill is also implicated through her duty to be the legal advisor of state agencies because the Act tasks the Wyoming Department of Agriculture with regulatory authority. Wyo. Stat. Ann. § 9-1-603(a)(v). Finally, the Wyoming Attorney General is required to represent Wyoming in cases in which the state is interested. Wyo. Stat. Ann. § 9-1-603(a)(iv). While Wyoming is immune from suit, that does not negate that it has an interest in the constitutionality of its laws. Through these examples, Defendant Hill's connection with SEA 24 is sufficient to invoke *Ex parte Young*. A state's attorney general is frequently a proper party under *Young* when a person is challenging the constitutionality of a felony or misdemeanor statute because the attorney general is the chief law enforcement officer of the state. *Bishop*, 760 F.3d at 1089.

Defendant Miyamoto is also a proper party. The first sentence of Wyo. Stat. Ann. § 11-51-104, entitled "Enforcement; fees; penalties," tasks the Wyoming Department of Agriculture with "chemical sampling and analysis of production or processing" of hemp licensees. Section 105 requires the Department of Agriculture to "adopt rules necessary to implement the provisions of this chapter." Wyo. Stat. Ann. § 11-51-105(a). It has implemented rules, including a violations section and a corrective action plan. WY Rules and Regulations 010.0005.61 §§ 13 & 14. Director Miyamoto's connection to the enforcement of SEA 24 cannot genuinely be disputed. As the director of the department of agriculture, this clearly implicates his position.

13

Federal law implicitly recognizes Defendants Hill's and Miyamoto's role in this suit:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

28 U.S.C.A. § 2403(b). Additionally, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. The United States Supreme Court has "explicit[ly]" recognized "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (no quotation source provided). Part of *Young*'s significance then, is that it enables a plaintiff to challenge a statute's alleged unconstitutional enforcement against one state official and bar enforcement of that statute by all state officials with the ability to enforce it. Thus, the availability of at least one proper party binds the state from enforcing a statute should it be declared unconstitutional.

### *Dismissal for Failure to State a Claim*

Defendants also move to dismiss the case under Fed. R. Civ. P. 12(b)(6). Based on this Court's analysis in the Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, the Court agrees Plaintiffs fail to state a claim for which relief can be granted. [ECF No. 30]. Plaintiffs' claims fail on the merits. The 2018 Farm

Bill does not provide the substantive right necessary to bring a preemption claim. [ECF No. 30, at 10–15]; *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 902–904 (10th Cir. 2017); *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1171 (10th Cir. 2023) ("Congress did not intend to create a private right in § 10114(b), which focuses on regulated entities (States and Tribes) and never mentions [Plaintiffs'] purported class of licensed hemp farmers."). SEA 24 also does not violate the dormant Commerce Clause as there is federal law in place and its enactment is within Wyoming's sovereign powers. [ECF No. 30, at 16–20]; *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 616 (1997) (Thomas, J., dissenting) ("the very premise of the negative Commerce Clause is the absence of congressional action"); *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (statutes "violate the Commerce Clause only if the burdens they impose on interstate trade are 'clearly excessive in relation to the putative local benefits.'" (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970))). There is no unconstitutional taking because the taking clause does not apply and even if it did, lost profits do not support a Takings Claim. [ECF No. 30, at 20–26]; *Mugler v. Kansas*, 123 U.S. 623, 668–69 (1887) ("prohibition[s] simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit."); *Andrus v. Allard*, 444 U.S. 51, 66 (1979) ("loss of future profits—unaccompanied by any physical property restriction—provides a slender reed [sic] upon which to rest a takings claim."). Finally, SEA is not void for vagueness as it sufficiently describes the conduct it prohibits. [ECF No. 30, at 26–31]. Defendants accurately state that Plaintiffs' argument "is actually a complaint about

15

overbreadth." [ECF No. 32, at 17]. The fact that Plaintiffs are unhappy with the substances SEA 24 prohibits, does not make the law vague.

## CONCLUSION

Defendants Hill and Miyamoto have a sufficient connection to the enforcement of SEA 24 for Plaintiffs' claims to proceed under the *Ex parte Young* exception to the Eleventh Amendment. However, the State of Wyoming and Governor Gordon are not proper parties to this suit and do have Eleventh Amendment Immunity. As to Defendants' Rule 12(b)(6) arguments, this Court agrees that Plaintiffs fail to state a claim. The Court's analysis in its prior Order shows the legal insufficiency of their claims. Further, Plaintiffs' Response to the Motion to Dismiss does not provide any new arguments that would alter that analysis. Accordingly, Plaintiffs' claims are dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED Defendants State of Wyoming and Governor Mark Gordon are entitled to Eleventh Amendment Immunity.

IT IS FURTHER ORDERED Plaintiffs fail to state a claim for relief and their Complaint is DISMISSED WITH PREJUDICE.

Dated this 15th day of August, 2024.

Kelly H. Rankin
United States District Judge

16